**JUDGE SWAIN**
Magistrate Judge Dolinger       11 CIV 6268

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN MEYER, MARC BELL, LARRY MULLIGAN-GIBBS and AIMEE JOHNSON, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br> -  against -<br><br>UNITED STATES TENNIS ASSOCIATION,<br><br>                    Defendant. | ECF CASE<br><br>Civil Action No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

*[stamp: SEP 8 2011 U.S.D.C. S.D.N.Y. CASHIERS]*

Plaintiffs Steven Meyer, Marc Bell, Larry Mulligan-Gibbs and Aimee Johnson ("Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned attorneys, for their Class and Collective Action Complaint against Defendant United States Tennis Association ("USTA" or the "Defendant") allege, upon information and belief, except as to the allegations that pertain to Plaintiffs which are based upon personal knowledge, as follows:

### NATURE OF THE ACTION

1.     This class action arises out of Defendant's disregard of federal and New York State labor laws during the course of Plaintiffs' employment as umpires at the U.S. Tennis Open in the main draw and the qualifying matches (the "US Open" or the "Open"). Plaintiffs bring this action pursuant to the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. 201, *et seq.*, and the New York Labor Law (the "NYLL"), for Defendant's misclassification of umpires, and failure to pay all wages due including

overtime pay. Plaintiffs seek damages on their own behalf and on behalf of all others similarly situated.

2.      The US Open, presented by the USTA, is, in the USTA's words, a "sports and entertainment extravaganza," that takes place annually over the course of two weeks in late August through early September at the Billie Jean King National Tennis Center in Queens, New York (the "Tennis Center").   Founded in 1881 as an entertainment diversion for high society, the US Open has evolved into an event that, in 2008, drew a crowd of 720,227 people over 26 sessions of tennis.

3.      The US Open is a boon to New York City's economy, drawing tourists from all over the world to New York City.  The US Open's image masks Defendant's pervasive violations of federal and state labor laws.  Under the management of the Defendant herein and for at least the past six years, umpires have not been paid in compliance with applicable federal and state law.

4.      During the relevant period, Plaintiffs and others similarly situated have been misclassified as "independent contractors," and have been deprived of pay to which they are entitled under federal and state wage and hour law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 and Section 216(b) of the FLSA, 29 U.S.C. §216(b).  Plaintiffs' state law claims are interposed in accordance with the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1), because Defendant is a New York corporation headquartered in this district.

6.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

## THE PARTIES

**The Plaintiffs**

7.     Plaintiff Steven Meyer is a resident of Florida. Plaintiff Meyer has been employed by Defendant as an umpire at various times during the relevant period.

8.     Plaintiff Marc Bell is a resident of Florida.   Plaintiff Bell has been employed by Defendant as an umpire at various times during the relevant period.

9.     Plaintiff Larry Mulligan-Gibbs is a resident of Pennsylvania.   Plaintiff Mulligan-Gibbs has been employed by Defendant as an umpire at various times during the relevant period.

10.     Plaintiff Aimee Johnson is a resident of Louisiana.   Plaintiff Johnson has been employed by Defendant as an umpire at various times during the relevant period.

11.     Each Plaintiff has consented to the FLSA claims in this action pursuant to FLSA, 29 U.S.C. §216(b), which will be filed with the Court.

**The Defendant**

12.     Defendant United States Tennis Association ("USTA") is a New York not-for-profit corporation with its principal place of business at 70 West Red Oak Lane, White Plains, New York.  The USTA is the national governing body for tennis whose mission is to promote and develop the sport of tennis. The Associated Press reported that in 2008, USTA's then Chief Executive Officer, Arlen Kantarian, was paid total compensation in excess of $9 million. At all times relevant to this Complaint, the USTA, through its "Professional Tennis" arm, managed all aspects of the USTA's involvement

in professional tennis including the US Open, and oversaw all operations at the USTA Billie Jean King National Tennis Center. USTA's Professional Tennis arm operates as a sports marketing, entertainment and media group and generates the bulk of the USTA's revenues. According to the USTA website, the USTA owns and operates the US Open.

13.     At all relevant times, the USTA had responsibility for staffing at the US Open including the selection and hiring of umpires to officiate at the matches. USTA was the employer of Plaintiffs and others similarly situated. USTA had and exercised the authority to assign work, evaluate umpires, discipline umpires, set work hours, set pay, set the dress code, establish policies for umpires' conduct while in the workplace and elsewhere, and set an alcohol consumption policy for hours during which the umpires are offsite. The USTA depended upon the umpires as an integral part of its business at the Open.

## COLLECTIVE ALLEGATIONS

14.     Plaintiffs bring the First Claim for Relief as a collective action pursuant to Section 216(b) of the FLSA, 29 U.S.C. §216(b) on behalf of themselves and other similarly situated people, which shall include:

> All persons who work or worked as umpires at the Tennis Center during the US Open in 2009, 2010 and 2011 and continuing through the entry of judgment in this action (the "FLSA Collective").

15.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs. There are likely hundreds of similarly situated current and former employees of Defendant who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are

known to Defendant, are readily identifiable, and can be located through Defendant's records that it is required to create and maintain under applicable federal and state law. Notice should be sent to the FSLA Collective Action Members pursuant to 29 U.S.C. §216(b).

## CLASS ACTION ALLEGATIONS

16.    Plaintiffs bring the Second and Third Claims For Relief as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Rule 23 Class"), consisting of:

> All persons who work or worked as umpires at the Tennis Center during the US Open in 2005, 2006, 2007, 2008, 2009, 2010 and 2011 and continuing through the entry of judgment in this action (the "Rule 23 Class Period").

17.    The Rule 23 Class is so numerous that joinder of all members is impracticable. The exact number of the Rule 23 Class members is unknown to Plaintiffs at this time but it is believed to be hundreds of persons. The identity of the Rule 23 Class members is known to Defendant and is contained in the employment records that it is required to create and maintain under state and federal law.

18.    Plaintiffs' claims are typical of the claims of the other members of the Rule 23 Class as Plaintiffs and all other members of the Rule 23 Class sustained damages arising out of Defendant's conduct in violation of state laws as complained of herein. Plaintiffs will fairly and adequately protect the interests of the members of the Rule 23 Class and have retained counsel competent and experienced in complex class action litigation. The Rule 23 Class members work, or have worked, for Defendant as umpires at the US Open were improperly classified as "independent contractors" by Defendant during the US Open that took place in 2005-2011; enjoy the same statutory rights and

protections under the NYLL; and have sustained similar types of damages as a result of Defendant's failure to comply with the NYLL and the supporting regulations.

19.     Plaintiffs have no interests that are contrary to or in conflict with those of the other members of the Rule 23 Class.

20.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

21.     Common questions of law and fact exist as to all members of the Rule 23 Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Rule 23 Class are:

    a.      Whether the NYLL and the supporting regulations were violated by Defendant's acts as alleged herein;

    b.      Whether Defendant failed to pay straight time, and/or overtime wages to its employees as required by the NYLL and supporting regulations;

    c.      Whether Defendant failed to keep true and accurate time and pay records for all hours worked by their employees, and other records required by the NYLL and the supporting regulations;

    d.      Whether Defendant failed to furnish Plaintiffs and the Rule 23 Class with an accurate statement of all wages, hours worked, rates paid, and gross wages as required by the NYLL and the supporting regulations;

    e.      Whether Defendant improperly classified Plaintiffs and the other Rule 23 Class members as independent contractors and thus denied Plaintiffs and Rule 23 class members the common benefits of employee status, including, but not limited to, overtime pay;

f.      Whether the members of the Rule 23 Class have sustained damages and, if so, the proper measure of such damages; and

g.      Whether Defendant's actions were willful.

22.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Rule 23 Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiffs and Rule 23 Class members to individually seek redress for the wrongful conduct alleged.  Individual class members lack the financial resources to conduct a thorough examination of Defendant's timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendant to recover such damages.  Class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments regarding Defendant's practices. Additionally, a class action decreases the likelihood that a defendant will retaliate against individual class members for asserting their statutory rights.

23.     Defendant has acted or has refused to act on grounds that are generally applicable to the Rule 23 Class, thereby making appropriate relief with respect to the Rule 23 Class as a whole.

**FACTUAL ALLEGATIONS**

24.     The US Open is held annually during a three-week period beginning during the end of August at the Tennis Center.  The Open may extend longer than three weeks if weather delays occur.  Gates to the Tennis Center open at 10:00 a.m. and play generally begins at 11:00 a.m. and ends anytime from 10:00 p.m. to 3:00 a.m., depending

on the weather and the length of the matches being played. The hours worked by Plaintiffs and others similarly situated are subject to weather delays and the length of the matches played.

25.    In order to be hired as an umpire at the US Open, an umpire must be certified by the USTA.  To become a USTA certified umpire, individuals must attend annual training courses and pass annual written tests. To maintain their certifications, umpires must work a specified minimum number of days, matches and tournaments.  All USTA certified umpires are required to adhere to the standards in the Officials' Code of Conduct (the "Code").  The Code, among other things, dictates the uniform to be worn by the umpire, the assignments that an umpire may accept, the communications that an umpire may have with the media and spectators and prohibits socializing with players.

26.    The US Open Selection Committee, whose members consist of various USTA employees and volunteers, reviews and selects all line umpire applicants for the US Open and advises on chair umpire selections.  Umpires are assigned to matches based upon, among other things, USTA certifications and evaluations.

27.    Umpires who are selected by the USTA to work at the US Open are assigned specific workdays by the USTA.  However, the umpires are expressly advised that the "assigned days" do not reflect actual day-to-day assignments:  "All day-to-day assignments are determined by the USTA throughout the US Open based upon all relevant criteria, including actual tournament needs, experience level of officials, certification level of officials and performance of officials."

28.    At all times relevant, compensation for umpires was set by the USTA and depended upon an umpire's certification level and whether the umpire was working in a

qualifying match or in the main draw.  For example, in 2010, compensation varied from a high of $200 per day for "ITF Gold Badge Chair Umpires" working in the main draw to a low of $115 per day for "USTA Sectional or Provisional Umpires" working in a qualifying match.

29.     Defendant dictated the umpires' conduct, duties, responsibilities and work schedule. The USTA dictated all policies concerning attendance, check-in times, rain delay procedures, departure times, and umpire evaluations. In addition umpires were required to attend mandatory meetings in advance of the usual "daily reporting time" at the Open.

30.     Umpires hired by the USTA are provided with credentials to work at the US Open.  Misuse of a US Open credential will result in termination of the umpire and ejection from the event.  Umpires are required to pick up their credentials and their required uniforms one day preceding their first compensated workday.  Thus, for example, in 2010, umpires were required to appear in person to pick up their uniforms and credentials at the US Tennis Center on Monday, August 23, 2010, prior to the start of the qualifying matches, or on Sunday, August 29, 2010, prior to the start of the main draw. Umpires were not compensated for the hours expended for this mandatory task.

31.     The USTA required umpires to report to work by 10 a.m. and, on days on which mandatory meetings were held, by 9 a.m.  Umpires who worked the day session during the Open were required to report by 10 a.m. and, in most years, umpires who worked the night session were required to report by 3 p.m.  Umpires often worked in excess of 8 hours per day, seven days a week during the course of the Open.

32.     The USTA required that umpires who traveled to New York from other locations by plane arrive one day before their first scheduled day to work and depart on the day following the last scheduled workday.  Earlier departures were required to be pre-approved by the USTA.  Defendant did not pay the umpires for either the day preceding their first work assignment or the day after their last work assignment.

33.     During the Open during the relevant period, umpires were paid based upon a schedule set and dictated by Defendant.  Umpires regularly worked in excess of forty hours per week but were not properly paid wages due them including but not limited to overtime for hours in excess of 40 hours per week.

**The Umpires Were Employees and Not Independent Contractors**

34.     During the Open, the umpires were the employees of Defendant as set forth above.  The umpires were required to work for all or a portion of the US Open, as determined by the USTA.  They did not set or dictate their own hours or schedules.  Each day of the US Open, umpires were required to be on premises from either 9 a.m. or 10 a.m. and to work for the duration of the day and evening sessions which often continued into the early hours of the following day.  The majority of the umpires who worked the Open were housed by Defendant at its expense at hotels in Manhattan and traveled to and from the Open on buses paid for and provided by Defendant.  To ensure their timely arrival at the Open, the umpires were required to be picked up as early as 7:30 a.m., adding to the length of their working day.  Airfare for umpires' travel to and from the Open was paid by Defendant.

35.    Defendant controlled when, where and how umpires performed their duties. Hours, order of work and schedules are dictated by the Defendant. Umpires cannot alter the hours they work.

36.    Defendants set the pay rate for umpires who were paid a fixed amount per day regardless of the number of hours they work. There is no negotiation between the USTA and the umpires concerning their pay rate.

37.    The umpires had no opportunity to realize a profit or incur a loss in connection with the performance of their duties at the US Open.  Defendant did not permit them to work for another company during working hours or to in any other way profit from their work.

38.    Defendant did not permit the umpires to work from home or at any preferred location.  All of the duties performed by the umpires were performed at the Tennis Center.

39.    Defendant provided the umpires with the equipment, tools and supplies necessary for performing their duties and paid for some or all of their meals at the Open. The umpires were required to wear uniforms provided by and paid for by Defendant.

40.    Defendant retained the authority to terminate an umpire without notice for any reason.

41.    Defendant required the umpires to attend mandatory meetings and/or training sessions as a condition of employment.

42.    Defendant supervised and regularly evaluated the job performance of the umpires.

43. Defendant depended upon the umpires as an integral part of its business in running the US Open. Without umpires, the US Open could not be held.

44. The Defendant maintains a continuing relationship with the umpires who often work at the US Open on repeated yearly occasions. Some umpires have worked at the US Open for more than thirty consecutive years.

**Defendant Failed to Maintain and Preserve Payroll Records**

45. Federal law requires Defendant to keep payroll records of Plaintiffs and the FLSA Collective Action Members for a specified period.

46. 29 CFR 516.2 requires that employers who employ employees who are subject to minimum wage and overtime provisions pursuant to section 6 or both sections 6 and 7(a) of the FLSA to maintain and preserve payroll or other records containing certain information and data with respect to each employee, including, *inter alia*, hours worked each workday and total hours worked each workweek.

47. Defendant violated 29 CFR 516.4 by failing to establish, maintain and preserve the payroll records of Plaintiffs and the FLSA Collective Action Members.

**FIRST CLAIM FOR RELIEF**
**Fair Labor Standards Act –Unpaid Wages And Unpaid Overtime Pay**
**(Brought on behalf of Plaintiffs and the FLSA**
**Collective Against Defendant)**

48. Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1-15 and 24-47.

49. At all relevant times, Plaintiffs and others similarly situated were "employees" of Defendant within the meaning of the FLSA.

50. At all relevant times, the Plaintiffs and the FLSA Collective were employed by Defendant within the meaning of the FLSA.

51.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or the production or sale of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. §203.

52.     At all relevant times, Defendant's business had annual gross revenues in excess of $500,000.

53.     Defendant was required to properly pay Plaintiffs and the FLSA Collective all wages due for all work performed as well as overtime wages for all hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

54.     At all relevant times, Defendant failed to pay Plaintiffs and the FLSA Collective all wages due including overtime wages for each hour worked in excess of 40 hours in a workweek under the FSLA, 29 U.S.C. §207.

55.     At all relevant times, Defendant illegally misclassified Plaintiffs and the FLSA Collective as "independent contractors" in an effort to avoid their obligation to pay Plaintiffs and the FLSA Collective overtime compensation in accordance with the FLSA, 29 U.S.C. §207. Defendant lacked any good faith basis for that classification. Defendant should have classified Plaintiffs and the FLSA Collective as "non-exempt" employees within the meaning of the FLSA.

56.     Defendant's violation of the overtime requirements of the FLSA was part of its regular business practice and constituted a pattern, practice, and/or policy.

57.     As a result of Defendant's violations of the FLSA, Plaintiffs and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in

an amount equal to their unpaid wages, prejudgment and post judgment interest, reasonable attorneys' fees, costs, and punitive damages pursuant to 29 U.S.C. §216(b).

58.     Defendant's unlawful conduct, as described above, was willful and intentional.  Defendant knew or should have known that the practices complained of herein were unlawful.  Defendant knew that Plaintiffs and the FLSA Collective routinely worked in excess of forty hours per week and they did so at Defendant's direction.

59.     Defendant has not made a good faith effort to comply with the FSLA with respect to the compensation of Plaintiffs and others similarly situated.

60.     Because Defendant's violations of the FSLA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §255(a).

### SECOND CLAIM FOR RELIEF
### New York Labor Law, Article 19: Unpaid Wages and Unpaid Overtime Pay
### (Brought on behalf of Plaintiffs and the Rule 23 Class Against Defendant)

61.     Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1–13 and 15–47.

62.     At all relevant times, Plaintiffs and the Rule 23 Class were "employees" within the meaning of the NYLL, and supporting regulations.

63.     At all relevant times, the Plaintiffs and the Rule 23 Class were employed by Defendant within the meaning of the FLSA.

64.     At all relevant times, Defendant was an "employer" within the meaning of the NYLL.

65.     At all relevant times, Defendant failed to pay Plaintiffs and the Rule 23 Class all wages due for all work performed  as well as overtime wages for each hour worked in excess of 40 hours in a workweek in violation of the NYLL.

66.     Defendant lacked a good faith basis to believe that its failure to pay Plaintiffs and the Rule 23 Class overtime wages was in compliance with the NYLL. Nevertheless, Defendant continued to deprive Plaintiffs and the Rule 23 Class of pay for all hours worked and of overtime wages.  Plaintiffs and the Rule 23 Class are therefore entitled to liquidated damages under the NYLL.

67.     At all relevant times, Defendant illegally misclassified Plaintiffs and the Rule 23 Class as "independent contractors" in an effort to avoid their obligation to pay Plaintiffs and the Rule 23 Class overtime compensation in accordance with the NYLL. Defendant lacked any good faith basis for that classification. Defendant should have classified Plaintiffs and the Rule 23 Class as "non-exempt" employees within the meaning of the NYLL.

68.     Due to Defendant's violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendant their unpaid wages including overtime wages for each hour worked in excess of 40 hours in a workweek, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

69.     Plaintiffs and the Rule 23 Class seek liquidated damages under the NYLL.

**THIRD CLAIM FOR RELIEF**
**Violations of New York Labor Law, Article 6, §191(1) and (3)**
**Failure to Timely Pay Wages**
**(Brought on behalf of Plaintiffs and the Rule 23 Class Against Defendant)**

70.     Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1 – 13, 15-47 and 62-69.

71.     The NYLL, Article 6, §191 requires employers to pay manual workers on a weekly basis and not later than seven calendar days after the end of the week in which

the wages are earned.  As a result of Defendant's violations of the NYLL and its failure to pay or timely pay all wages (including overtime pay when due), Plaintiffs and the the Rule 23 Class have been, and continue to be damaged.

72.     Defendant lacked a good faith basis to believe that its failure to pay timely wages to Plaintiffs and the Rule 23 Class was in compliance with the NYLL.  Plaintiffs and the Rule 23 Class are therefore entitled to liquidated damages under the NYLL, Article 6, §198.

73.     Plaintiffs and the Rule 23 Class seek monetary damages, reasonable attorneys' fees and costs and prejudgment and post-judgment interest.

74.     Plaintiffs and the Rule 23 Class seek liquidated damages under the NYLL.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, the FLSA Collective and/or the Rule 23 Class pray for the following relief:

A.     An order certifying the case as a collective action for the violations of the FLSA, as it pertains to the First Claim under 29 U.S.C. §216(b) for the class of employees described herein and designating Plaintiffs' counsel as counsel for the FLSA Collective;

B.     Designation of the named Plaintiffs as representatives of the FLSA Collective;

C.     An order certifying the case as a class action pursuant to Federal Rule of Civil Procedure 23 as it pertains to the Second Claim and Third Claim for the class of employees described herein, certifying Plaintiffs as the class representatives and designating Plaintiffs' counsel as Class counsel;

D.      Judgment for Plaintiffs and the FLSA Collective for all statutory, compensatory, consequential, liquidated, and punitive damages, or any other damages authorized by law or equity, sustained as a result of Defendant's unlawful conduct for which Defendant is liable, as well as prejudgment and post-judgment interest;

E.      Judgment for Plaintiffs and the Rule 23 Class for all statutory, compensatory, liquidated and consequential damages, or any other damages authorized by law or equity, sustained as a result of Defendant's unlawful conduct, for which Defendant is liable, as well as prejudgment and post-judgment interest;

F.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and under appropriate state law;

G.      An award to Plaintiffs and the Rule 23 Class and/or FLSA Collective for their reasonable attorneys' fees, costs and expenses as authorized by law; and

H.      Any and all other relief as authorized by the federal or state statutes, common law or equity which the Court deems appropriate under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a trial by jury.

Dated: New York, New York
       September 8, 2011

ABBEY SPANIER RODD & ABRAMS,
LLP

Judith L. Spanier
jspanier@abbeyspanier.com
212 East 39th Street
New York, New York 10016
Telephone: 212-889-3700

LAW OFFICES OF MITCHELL SCHLEY,
LLC

Mitchell Schley, Esq.
mschley@schleylaw.com
245 Park Avenue, 24th Floor
New York, New York 10167
(212) 672-1848

**Attorneys for Plaintiffs**

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against the United States Tennis Association in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. Section 216(b). I hereby designate Abbey Spanier Rodd & Abrams, LLP, and the Law Offices of Mitchell Schley, LLC to represent me in such lawsuit.

_____
Signature

Aimee Linette Johnson
Full Legal Name (print)

201 Tupawek Dr.
Street Address

West Monroe LA 71291
City, State          Zip Code

# FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against the United States Tennis Association in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. Section 216(b). I hereby designate Abbey Spanier Rodd & Abrams, LLP, and the Law Offices of Mitchell Schley, LLC to represent me in such lawsuit.

_____

**Signature**

Larry Mulligant-Gibbs
**Full Legal Name (print)**

330 Marvin Road
**Street Address**

Elkins Park PA 19027
**City, State                   Zip Code**

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against the United States Tennis Association in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. Section 216(b).  I hereby designate Abbey Spanier Rodd & Abrams, LLP, and the Law Offices of Mitchell Sohley, LLC to represent me in such lawsuit.


*Signature*


MARC BELL
_Full Legal Name (print)_


2048 NW MEADOWS LANE, 2005
_Street Address_


DELRAY BEACH, FL 33444
_City, State        Zip Code_