UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN MEYER, MARC BELL, LARRY MULLIGAN-GIBBS and AIMEE JOHNSON, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>- against -<br><br>UNITED STATES TENNIS ASSOCIATION,<br><br>       Defendant. | No. 11 cv 06268 (ALC)(MHD) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL**

             ABBEY SPANIER RODD & ABRAMS, LLP
             Judith L. Spanier
             jspanier@abbeyspanier.com
             Orin Kurtz
             okurtz@abbeyspanier.com
             212 East 39th Street
             New York, New York 10016
             Telephone: 212-889-3700

             LAW OFFICES OF MITCHELL SCHLEY, LLC
             Mitchell Schley, Esq.
             mschley@schleylaw.com
             245 Park Avenue, 24th Floor
             New York, New York 10167
             Telephone: 212-672-1848

             **Attorneys for Plaintiff**

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................3

        A.      Misclassification Actions are Ideal for Class Certification........................................3

        B.      Common Questions of Law and Fact Predominate ....................................................4

        C.      Plaintiffs are Typical of the Class and Adequate Representatives ............................9

        D.      A Class Action is Superior to Hundreds of Individual Actions...............................10

        E.      Misleading Contentions in the USTA's Recitation of Facts do not Bar Class Certification ...................................................................................................11

CONCLUSION..............................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ................................................................................................12

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................................... 3, 4, 7

*Bynog v. Cipriani Grp., Inc.*,
  1 N.Y.3d 193 (2003) ........................................................................................... 4, 5, 6

*Dalton v. Lee Publ'ns, Inc.*,
  270 F.R.D. 555 (S.D. Cal. 2010) ...............................................................................3

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................ 2, 7

*Deboissiere v. American Modification Agency*,
  No. 09-CV-2316 (JS) (MLO), 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010) .............9

*Edwards v. Publishers Circulation Fulfillment, Inc.*,
  268 F.R.D. 181 (S.D.N.Y. 2010) ................................................................................8

*Feinstein v. Firestone Tire & Rubber Co.*,
  535 F. Supp. 595 (S.D.N.Y. 1982) ...........................................................................11

*Flores v. Anjost Corp.*,
  11 Civ. 1531 (CM), 2012 WL 2339267 (S.D.N.Y. June 19, 2012) ............................4

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
  281 F.R.D. 100 (E.D.N.Y. 2011) ........................................................................... 1, 4

*Gortat v. Capala Bros., Inc.*,
  No. 07 Civ. 3629 (ILG) (SMG), 2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012)
  (Gold, Chief M.J.) .....................................................................................................3

*Hart v. Rick's Cabaret Int'l Inc.*,
  No. 09 Civ. 3043 (JGK), 2010 WL 5297221 (S.D.N.Y Dec. 20, 2010) ........... 2, 3, 9, 10

*In re Fosamax Prods. Liab. Litig.*,
  248 F.R.D. 389 (S.D.N.Y. 2008) ..............................................................................11

*In re IPO,*
    471 F.3d 24 (2d Cir. 2006)..................................................................................................3, 4

*Lee v. ABC Carpet & Home,*
    236 F.R.D. 193 (S.D.N.Y. 2006)........................................................................................1, 3

*Lewis v. Alert Ambulette Serv. Corp.,*
    No. 11-CV-442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012).................................................1

*Mendez v. Pizza on Stone, LLC*,
    No. 11 Civ. 6316 (DLC), 2012 WL 3133522 (S.D.N.Y. Aug. 1, 2012).............................7, 12

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,*
    No. 08 Civ. 5653 (PAC), 2011 WL 3874821  (S.D.N.Y. Aug. 16, 2011)...............................4

*Niemiec v. Ann Bendick Realty,*
    No. 04-CV-897 (ENV) (KAM), 2007 U.S. Dist. LEXIS 98840 (E.D.N.Y. Mar. 30, 2007).......7

*Novak v. Home Depot U.S.A., Inc.*,
    259 F.R.D. 106 (D.N.J. 2009)................................................................................................10

*Odom v. Hazen Transp., Inc.*,
    275 F.R.D. 400 (W.D.N.Y. 2011) ............................................................................................3

*Poplawski v. Metroplex on the Atl., LLC*,
    No. 11-CV-3765, 2012 WL 1107711  (E.D.N.Y. Apr. 2, 2012)...............................................1

*Scovil v. Fedex Ground Package Sys.*, No. 1:10-CV-515-DBH, 2012 WL 3308831
    (D. Me. Aug. 13, 2012)............................................................................................................3

*Spencer v. Beavex, Inc.*,
    No. 05-CV-1501 WQH (WMC), 2006 WL 6500597 (S.D. Cal. Dec. 15, 2006).....................10

*Trejos v. Edita's Bar & Rest., Inc.*, No. CV-08-1477 (ARR), 2009 WL 749891
    (E.D.N.Y. Mar. 17, 2009) .......................................................................................................12

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    275 F.R.D. 193 (S.D.N.Y. 2011)............................................................................................4

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................................9

Fed. R. Civ. P. 23(b)(3)............................................................................................................. 4, 10

Plaintiffs Steven Meyer, Marc Bell, Larry Mulligan-Gibbs and Aimee Johnson ("Plaintiffs") respectfully submit this reply memorandum of law in further support of their motion for an order (1) certifying a class of all persons who work or worked as umpires (the "Class" or the "Umpires") at the US Open in the years 2005-2011 and continuing through the entry of judgment in this action (the "Class"); (2) appointing Plaintiffs as Class representatives; and (3) appointing Abbey Spanier Rodd & Abrams, LLP and the Law Offices of Mitchell Schley as Class Counsel.

## PRELIMINARY STATEMENT

Plaintiffs allege, and the USTA admits, that the USTA classified *all* Umpires as independent contractors, and failed to pay them overtime as required by the New York Labor Law ("NYLL"). On July 13, 2012, as a result of this undisputed policy, the Court granted Plaintiffs' motion for "conditional certification" pursuant to 29 U.S.C.§216(b)—an event that creates "an inclination to grant class certification of state labor law claims [pursuant to Rule 23]." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 104 (E.D.N.Y. 2011); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006) (same)[1].

As Plaintiffs' opening brief ("Pl. Br.") showed, class certification is wholly appropriate in this action due to the USTA's near identical treatment of the Umpires. Despite branding all Umpires as "independent contractors" pursuant to contracts that are "largely the same" (Opp. at 9), the USTA controls the Umpires as if they are employees: the USTA dictates the Umpires' conduct on and off the court—year round—through its Official's Code of Conduct, dictates the Umpires' duties, responsibilities and work schedule, selects which Umpires work at the U.S.

---

[1] *See also Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *5 (E.D.N.Y. Apr. 2, 2012); *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *8 (E.D.N.Y. Jan. 19, 2012).

1

Open, determines the Umpires' daily assignments based on evaluations of the Umpires that pick at small details such as the position of an Umpire's hands, and unilaterally sets the pay rates for all Umpires.

In an attempt to undermine Plaintiffs' showing, the USTA latches onto a series of inconsequential, and in some cases theoretical, differences between the Umpires. The USTA points out several purported differences in the duties of line umpires and chair umpires—the only two job titles at issue in this case—and argues that these differences show varying control over the Umpires and thus destroys predominance. However, all Umpires are controlled identically through the USTA's Official's Code of Conduct and several other documents; moreover, courts have held that small differences in job responsibilities do not defeat predominance. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008).

The USTA also points to a non-existent "conflict," speculating that some Umpires may want to remain as independent contractors in order to receive the purported tax benefits flowing from that misclassification. To the extent any Umpire holds such a belief, Rule 23 expressly permits any class member to opt out of the action and, as courts have recognized, the relevant analysis is whether the named plaintiffs have a conflict with the Umpires who remain in the Class. *See Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043 (JGK), 2010 WL 5297221, at *7 (S.D.N.Y Dec. 20, 2010). The USTA points to no such actual conflict.

Ultimately, the USTA's opposition misses the forest for the trees: The USTA has taken the position in each and every Umpire's agreement, throughout the entire Class period, that all Umpires are independent contractors. "Until the lawsuit, [the USTA] did not maintain that some [Umpires] were independent contractors while others were not. Thus, the [misclassification] question initially should be subject to determination on common evidence: [the USTA's] general

2

treatment of a class of its [Umpires]" as independent contractors. *Scovil v. Fedex Ground Package Sys.*, No. 1:10-CV-515-DBH, 2012 WL 3308831, at *6 (D. Me. Aug. 13, 2012).

For all the reasons stated herein and in Plaintiffs' opening brief, Plaintiffs' motion should be granted in its entirety.

## ARGUMENT

### A.   Misclassification Actions are Ideal for Class Certification

As Plaintiffs showed in their opening brief, many "courts have previously found [that] the propriety of the defendants' blanket categorization of the plaintiffs as independent contractors, and, if improper, the legal consequences of that categorization, by their nature tend to predominate over any individual issues." *Hart*, 2010 WL 5297221 at *7; *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 408 (W.D.N.Y. 2011); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001); *Scovil*, 2012 WL 3308831; *Dalton v. Lee Publ'ns, Inc.*, 270 F.R.D. 555, 563 (S.D. Cal. 2010).[2]

Nonetheless, the USTA seeks to cast doubt on some of Plaintiffs' cited authorities. First, the USTA argues that these cases failed to follow *In re IPO*'s "preponderance of the evidence" standard—which is directly contradicted by Judge Koeltl's citation to that case in granting class certification. *See Hart*, 2010 WL 5297221 at *5. The USTA next argues that *Odom* is inapposite because that decision occurred in the settlement context. However, *Odom* has been cited in an adversarial context. *See Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629 (ILG) (SMG), 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012) (denying defendants' motion to decertify class). Finally, the USTA contends that *Ansoumana* is of limited precedential value because it was decided

---

[2]   *Scovil* and *Dalton* were decided under the laws of Maine and California, respectively. Similar to New York, each of those states' laws examines the right to control as the "most important aspect of the employee-employer relationship." *Dalton*, 270 F.R.D. at 562; *Scovil*, 2012 WL 3308831, at *4-5.

3

before *In re IPO* (Opp. at 23); to the contrary, dozens of post-*IPO* decisions have cited *Ansoumana* and the USTA has not otherwise attempted to distinguish the case. *E.g., Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 200 (S.D.N.Y. 2011); *Garcia*, 281 F.R.D. at 108.

The USTA also relies heavily on *Dukes v. Wal-Mart*, despite the repeated holdings of courts in this District that the "weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Flores v. Anjost Corp.,* 11 Civ. 1531 (CM), 2012 WL 2339267, at *11 (S.D.N.Y. June 19, 2012); *see also* Pl. Br. at 22.

### B.  Common Questions of Law and Fact Predominate

"To satisfy the predominance prong of Rule 23(b)(3), a plaintiff must show that common proof will predominate at trial with respect to the essential elements of liability of the underlying causes of action." *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2011 WL 3874821, at *5 (S.D.N.Y. Aug. 16, 2011). In their opening brief, Plaintiffs showed by a preponderance of the evidence (*In re IPO,* 471 F.3d 24 (2d Cir. 2006)) that the degree of control the USTA exercises over the Umpires—which is the "critical inquiry" in determining whether a plaintiff is an employee (*Bynog v. Cipriani Grp., Inc.,* 1 N.Y.3d 193, 198 (2003))—is substantially similar, if not identical, as to all Umpires and thus common proof will predominate the question of whether the Umpires are employees. Pl. Br. at 18-19; *Id.* at 9-12.

Specifically, Plaintiffs showed that all Umpires are uniformly subject to the USTA's control through (1) the Official's Code of Conduct, which applies to all Umpires on a year-round basis despite the fact that the Open is a three-week event, Kaufman Tr. at 167:13-168:3; (2) the USTA's admission that "most of the issues" that caused Umpires to be terminated in accordance with the Official's Code of Conduct "happened off court and not on court," Kaufman Tr. at

4

145:6-16; (3) the USTA's acceptance letters and Umpire handbooks, which set out the time that all Umpires must report to the Open each day and dictate the manner and means by which Umpires must perform their jobs (Kurtz Exs. 1, 13); (4) the requirement that no Umpire can leave at the end of the day without the USTA's permission (Kaufman Tr. 181:19-182:7); (5) the requirement that all Umpires must attend mandatory meetings at the Open; (6) the requirement that the USTA must approve all Umpires to work at the Open, the procedure for which is set forth in the USTA's selection guidelines (Kurtz Ex. 20); (7) the requirement that, in order to take a day off during the Open, the Umpires must obtain the USTA's permission, which is granted only if the USTA's "tournament needs" are met (Kaufman Tr. at 139:2-140:19); (8) the requirement that all Umpires must remain in or near the Umpires' lounge between matches (Johnson Tr. at 155:23-156:11; Mulligan-Gibbs Tr. at 96:20-97:8); and (9) the stringent evaluations of the Umpires' on-court performance, drilling down to such minute details as the position of their hands and their posture and the angle at which they tilt their fingers, which the USTA uses to determine an Umpire's assignments on a daily basis. Meyer Tr. at 82:20-83:8; Kaufman Tr. at 58:21-59:2; Pl. Br. at 12; Kurtz Ex. 1.[3]

      The USTA argues that Plaintiffs have made "no effort," to address whether the NYLL's other "employee" factors are subject to common proof and instead have only addressed the purportedly different FLSA employee test. Opp. at 12. As an initial matter, the USTA's cited

---

[3]     The USTA misleadingly argues that Plaintiffs have ignored the "control" factor as set forth in *Bynog,*, 1 N.Y.3d 193. Opp. at 12. To the contrary, Plaintiffs devoted a substantial part of their brief to showing the USTA's uniform control over the Umpires and expressly cited to *Bynog*. Pl. Br. at 18-19; Pl. Br. at 9-12 (factual recitation of the "uniform control" exercised by the USTA).

authority holds that the FLSA and NYLL tests are "similar." *See Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306-07 (E.D.N.Y. 2009) (cited by USTA at page 12).[4]

With regard to the NYLL factors beyond control:[5] (1) Whether the Umpires worked "at their own convenience" is a uniform consideration because, once their schedule is established, the USTA requires the Umpires to obtain the USTA's express consent to take a day off which is determined by the USTA's needs. (2) Whether the Umpires were free to engage in other employment—to the extent this factor is entitled to any weight given that the Umpires get on the bus to the Open at 7:45 a.m. and return late at night—is identical for all Umpires in the years 2010 and 2011 because Paragraph 6 in the 2010 and 2011 agreements expressly states that the Umpires are free to do so. Kurtz Exh. 16 at PL-MEYER-13; *Id.* at USTA-110. With regard to the years 2005-2009, the contracts were silent on this matter and thus the common question will be the USTA's intent in that silence; (3) With regard to "fringe benefits," Paragraph 6 of each contract, in every year, states that the Umpires are "not entitled to receive any benefits which employees of the USTA are entitled to receive." Kurtz Exh. 16. (4) All Umpires appear to be on the USTA's payroll for their work at the US Open and their pay is set out in the acceptance letters that are sent to all Umpires. Finally, (5) all of the Umpires work on a fixed schedule: the USTA dictates their arrival time as 10 a.m., the Umpires are not permitted to leave until the USTA gives permission, and the Umpires are not permitted take a day off without the USTA's permission.

---

[4]  Indeed, if the two tests were different as the USTA suggests, then a court could potentially reach the incongruent result that a plaintiff is an employee under federal law but not under the NYLL, or vice versa. The USTA has not pointed to any decision reaching this conclusion.

[5]  Those factors examine whether the plaintiff (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule. *Bynog*, 193 N.Y. 3d at 198.

In an attempt to defeat predominance, the USTA points to small factual differences between the Umpires. First, the USTA asserts that the Umpires are subject to differing degrees of control because Umpires may be certified at four different levels. Opp. at 14. An Umpire's level of certification, however, does not change the degree of control the USTA exercises—the USTA approves every Umpire that works at the Open (Kaufman Tr. at 110:19-113:7), by a standard process set forth in the US Open Officials Selection Guidelines (Kurtz Exh. 20), and those guidelines do not differ by certification level.

The USTA also states that some Umpires are "not certified at all." Opp. at 14. However, the evidence contradicts that statement: in paragraph 7 of each contract, all Umpires represent that they are "qualified and certified" by either the International Tennis Federation (the "ITF"), the USTA, or an organization in good standing with the ITF. Kurtz Exh. 16.

The USTA also attempts to show that differing job responsibilities between line umpires and chair umpires defeat predominance. These small differences—for instance, chair umpires can make certain calls that line umpires cannot and thus are purportedly subject to a differing degree of control—are overshadowed by the uniform policies of control governing all Umpires. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.").[6]

---

[6] Even if the Umpires' positions were deemed entirely distinct from one another—which they are not—the class could still be certified. Courts have certified classes consisting of employees who worked multiple, different positions. *See Mendez v. Pizza on Stone, LLC*, No. 11 Civ. 6316 (DLC), 2012 WL 3133522 (S.D.N.Y. Aug. 1, 2012) (delivery person appointed as representative of class that included kitchen staff, waitstaff, bartenders and busboys); *Niemiec v.*

The USTA concedes that many Umpires, including Plaintiff Johnson, "regularly" work as both line umpires and chair umpires during a single tournament. Dkt. No. 39 at 6; Opp. at 7; Kaufman Tr. at 114:20-22; *see also* Johnson Tr. at 63:12-16; Johnson Tr. at 143:10-17.  Thus, any distinction between line and chair umpire is blurred to the point where small differences in responsibilities are irrelevant.

The USTA also attempts to show that silver and gold badge chair umpires are not evaluated by the USTA at the Open, thus the degree of control exercised over the Umpires varies. Opp. at 8.[7] Nowhere does the USTA state how many silver and gold badge umpires work at the Open, and the evidence indicates that the vast majority of Umpires are evaluated. The USTA uses as many as ten line umpires to one chair umpire in any given match, and there is no dispute that all line umpires are evaluated. Kaufman Tr. at 88:20-23. The USTA also admits that white badge and bronze badge chair umpires are evaluated.  Kaufman Tr. at 99:14-19.

Finally, the USTA cites to two inapposite cases from this District that denied class certification under wholly different circumstances from those present here.  In *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181 (S.D.N.Y. 2010), the court denied certification of a class of delivery drivers, describing as "material[ly] misleading" the plaintiffs' contention that that an independent contractor agreement established control on a classwide basis. *Id*. at 186. Despite the plaintiff's contention, the agreement did not set the delivery drivers' hours, did not require the drivers were to arrive at the distribution center to pick up their haul at

---

*Ann Bendick Realty*, No. 04-CV-897 (ENV) (KAM), 2007 U.S. Dist. LEXIS 98840, at *6 (E.D.N.Y. Mar. 30, 2007) ("handymen, painters, plumbers, maintenance workers, janitors, porters, superintendents and other workers with the same or similar duties"); *Ansoumana*, 201 F.R.D. at 87 (some class members were delivery persons, some were dispatchers, class members worked different hours at different locations for different employers).

[7]   This assertion is also called into question by the evidence.  Plaintiff Mark Bell, who is a silver badge chair umpire, was indeed evaluated at the Open. Kurtz Exh. 19.

8

any specific time, and did not even set the pay rate for the drivers. *Id*. Thus, the court held that the plaintiffs failed to establish "a common policy of reserving control over the means the deliverers used to complete their tasks." *Id*. Here, Plaintiffs have shown that their misclassification "as independent contractors (the central issue that gives rise to all of their claims) was pursuant to a blanket policy that applied to all members of the putative class." *Hart*, 2010 WL 5297221, at *6. Plaintiffs have also shown that the USTA exercises control over all of the Umpires through its code of conduct—which is attached as Exhibit A to each and every contract signed by an Umpire (Kurtz Exh. 16) and is strictly enforced by the USTA. Kurtz Exh. 17; Pl. Br. at 10.

The USTA also heavily relies on *Deboissiere v. American Modification Agency*, No. 09-CV-2316 (JS) (MLO), 2010 WL 4340642, at *4 (E.D.N.Y. Oct. 22, 2010). In that case, however, the plaintiffs submitted "nothing at all" concerning two factors of the NYLL employment test, and did not provide any information concerning any class members other than the named plaintiff.

### C. Plaintiffs are Typical of the Class and Adequate Representatives

The parties agree that the typicality and adequacy requirements of Rule 23(a) tend to merge. Pl. Br. at 23; Opp. at 16. Plaintiffs have shown that they are typical of the Umpires because each of Plaintiffs' claims arises from the exact same course of events, and Plaintiffs will make the exact same legal arguments, as the members of the Class: that the Umpires are misclassified as independent contractors and denied overtime pay. Each of those wrongs results from the USTA's policies and affects the members of the Class in the same way, and the USTA has not contested this assertion. Pl. Br. at 22-24.

9

In a puzzling argument, the USTA asserts that a conflict exists between Plaintiffs and certain unspecified class members who purportedly rely on the "preferential tax treatment" gained from filing their taxes as independent contractors.[8] Opp. at 18. This argument is fundamentally flawed because it neglects Rule 23's built-in safeguard that allows the Court to "exclude from the Class any [Umpire] who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). "Although some class members no doubt will opt out of the class . . . this does not mean that the interests of the named plaintiffs are antagonistic to those of the [Umpires] who choose to remain a part of the class, which is the relevant inquiry." *Hart*, 2010 WL 5297221, at *6.

### D. A Class Action is Superior to Hundreds of Individual Actions

Under Rule 23(b)(3)'s "superiority" requirement, the Court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The USTA does not contest Plaintiffs' showing that the four factors in this analysis are met. Pl. Br. at 23-24; Opp. at 24-25. Instead, the USTA claims that because the Umpires' claims purportedly require individualized proof, the USTA has a "due process" right to litigate its defenses against each Umpire.

This argument makes no sense. In effect, the USTA argues that it will litigate against hundreds of Umpires concerning the interpretation of an identical contract provision (the "independent contractor" clause in Paragraph 6), the control it exercises pursuant to a single code of conduct, and several other policies that do not vary between or among umpires, to determine whether the same provisions of law have been violated.

The USTA's cited authority does not help its position. In *Spencer v. Beavex, Inc.*, No. 05-CV-1501 WQH (WMC), 2006 WL 6500597 (S.D. Cal. Dec. 15, 2006), the only mention of "due

---

[8]   The USTA has provided no support for its proposition that filing as an independent contractor provides "preferential tax treatment."

10

process" was in an argument raised by the defendant that the court did not address. *Id.* at *6. In *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106 (D.N.J. 2009), a case alleging misclassification of certain management employees as exempt under the FLSA's overtime requirements, the court held that a class action was not superior because (1) the evidence showed that the duties of the manager-plaintiffs varied greatly from store to store in a statewide class action; and (2) the plaintiffs had incentive to bring individual actions because their individual recoveries could be "substantial," in the range of $25,000 per year which could double their salaries. Here, the Umpires work in a single location subject to uniform rules set out by the USTA, and any individual recovery will be small because the Open is a three-week event taking place once a year.

The USTA also cites two cases that involved allegedly defective products. Each of these cases involved highly individualized questions not present here. *See Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (court or jury would be required to examine the performance of each class member's tires); *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 398 (S.D.N.Y. 2008) (MDL consisting of 360 consolidated class actions for physical harm caused by pharmaceutical).

### E.     Misleading Contentions in the USTA's Recitation of Facts do not Bar Class Certification

In its statement of facts, the USTA raises a number of irrelevant "facts" that may confuse the class certification analysis. Although these facts are not repeated in the USTA's argument section, we nonetheless address them because the USTA has implied that they have significance.

First, the USTA embarks on an entirely irrelevant, three-page disposition of facts concerning various non-U.S. Open tournaments. Opp. at 3-6. These facts do not show a need for individualized inquiries at the Open, which is the only work with which this case is concerned.

11

The USTA admits that it failed to keep any records of the hours the Umpires worked (Kaufman Tr. at 175:25-176:14; *Id.* at 175:20-240), and gloats over that fact, stating that as a result of the USTA's failure, Plaintiffs cannot prove that each Umpire worked over 40 hours per week. Opp. at 2. However, courts have recognized that "an employer's failure to keep accurate records can obscure a multitude of wage and overtime violations" (*Mendez*, 2012 WL 3133547 at *3), and thus the USTA's "failure to keep accurate records of hours worked is a significant common violation that lowers the burden of proof for those employees[.]" *Id.*; *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (superseded on other grounds) (same).

The USTA also asserts that individual Umpires may have different understandings as to the meaning of their independent contractor agreements. Opp. at 9. However, "the subjective intent of the parties in forming the employment relationship has little to no significance in determining whether a plaintiff is an independent contractor or employee." *Trejos v. Edita's Bar & Rest., Inc.*, No. CV-08-1477 (ARR), 2009 WL 749891, at *2 (E.D.N.Y. Mar. 17, 2009) (denying motion for discovery regarding plaintiffs' intent).

Finally, the USTA once again asserts that this case consists of an "international class." Opp. at 1. Plaintiffs have repeatedly shown that this is misleading: all of the work is performed at a single tournament in Queens, and all relevant contracts choose the NYLL as governing law. Pl. Br. at 7; Dkt. No. 43 at 5; Kurtz Exh. 16 at ¶13.

## CONCLUSION

For the reasons stated herein and in Plaintiffs' opening brief, Plaintiffs' motion for class certification, appointment of class representatives, and appointment of class counsel should be granted in its entirety.

Dated: New York, New York
       August 24, 2012

ABBEY SPANIER RODD & ABRAMS, LLP

By:   s/Orin Kurtz
Judith L. Spanier
jspanier@abbeyspanier.com
Orin Kurtz
okurtz@abbeyspanier.com
212 East 39th Street
New York, New York 10016
Telephone:  212-889-3700

LAW OFFICES OF MITCHELL SCHLEY, LLC

Mitchell Schley, Esq.
mschley@schleylaw.com
245 Park Avenue, 24th Floor
New York, New York  10167
Telephone:  212-672-1848

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I, Orin Kurtz, hereby certify that on this 24th day of August, 2012, a copy of Plaintiffs' Reply Memorandum Of Law In Further Support Of Their Motion For Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel, was served on the counsel for Defendant listed below via ECF.

Richard J. Rabin
Kelly Brown
Akin Gump Straus Hauer & Feld LLP
One Bryant Park
New York, New York 10036
rrabin@akingump.com
kbrown@akingump.com

Nathan Oleson
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Ave.
Washington D.C. 20036
noleson@akingump.com

                                                     ____s/Orin Kurtz_____