**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN MEYER, MARC BELL, LARRY MULLIGAN-GIBBS and AIMEE JOHNSON, on behalf of themselves and all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES TENNIS ASSOCIATION, <br><br> Defendant. | Civ. Action No. 11-CV-6268(ALC) |

## JOINT STATUS REPORT

Plaintiffs Steven Meyer, Marc Bell, Aimee Johnson, and Larry Mulligan-Gibbs and defendant United States Tennis Association ("USTA"), by and through their undersigned counsel, hereby submit the following status report pursuant to the Court's October 5, 2012 Order. Pursuant to the October 5 Order, the parties have provided a report regarding the status of discovery regarding the USTA's defense under 29 U.S.C. § 213(a)(3) and "note[d] their disagreement regarding the content of the [proposed class] notice, if any."

**I.      STATUS REPORT REGARDING DISCOVERY**

**A.      Current Status of Discovery**

At the September 25, 2012 conference, the parties reported that the USTA had recently responded to Plaintiffs' Second Requests for Documents and Plaintiffs' Second Interrogatories. These responses were served on September 18, 2012 pursuant to an agreement between the parties.  The USTA subsequently made supplemental productions of documents responsive to

these requests on September 21 and October 11, 2012. The USTA does not anticipate making any further supplemental productions regarding these requests.

On October 1, 2012, the USTA served its responses to Plaintiffs' Third Request for Production, which contained one document request for a discrete set of advertisements related to the USTA's hiring of workers for the US Open. The USTA produced documents responsive to these requests on October 11, 2012. The USTA does not anticipate making any further supplemental productions regarding these requests.

On October 3, 2012, Plaintiffs' counsel wrote counsel for the USTA, contending that deficiencies existed in the USTA's responses to Plaintiffs Second Requests for Production, Plaintiffs' Second Interrogatories, and Plaintiffs' Third Request for Production. A copy of Plaintiffs' correspondence is attached hereto as Exhibit A. On October 10, 2012, counsel for the USTA responded to Plaintiffs' counsel's October 3 correspondence. A copy of the USTA's correspondence is attached hereto as Exhibit B. Plaintiff responded to the USTA's October 10, 2012 letter by e-mail on October 18, 2012. A copy of this correspondence is attached hereto as Exhibit C. In the event the parties are unable to agree on the sufficiency of the USTA's discovery responses, Plaintiffs will request a pre-motion conference for a motion to compel with Magistrate Judge Dolinger within four business days after the parties conclude that an agreement cannot be reached.

At the Court's June 22, 2012 conference, plaintiffs identified one individual, Joseph Healy from whom they wished to take deposition testimony prior to responding to the USTA's motion for summary judgment. Plaintiffs have informed Defendant they will take Mr. Healy's deposition and have served a notice of deposition, subject to resolution of any discovery disputes regarding documents related to the USTA's receipts.

2

B.     **Defendant's Position Regarding Further Discovery**

Defendant believes that plaintiffs' requested discovery regarding the USTA's exemption defense under 29 U.S.C. § 213(a)(3) is nearly complete and the Court should set deadlines for the completion of such discovery. Defendant further requests that the Court set a deadline for the filing of the USTA's motion for summary judgment, which has been ready for submission since May 2012.

The USTA believes the only remaining discovery requested by plaintiffs that has not been addressed is the deposition of Mr. Healy. To the extent plaintiffs still intend to depose Joseph Healy, the witness identified in the USTA's April 2012 supplemental initial disclosures pursuant to Rule 26(a), the USTA requests that the Court set a deadline of November 16, 2012 for his deposition. Defendant believes that there is no basis for further delaying Mr. Healy's deposition because all document relevant to the subjects of his testimony, as identified in the USTA's initial disclosures, have been produced by the USTA.

To the extent plaintiffs intend to seek a pre-motion conference regarding the USTA's objections and responses to their written discovery requests, defendant requests that the Court set a deadline of October 26, 2012 for the submission of this request. Defendant will agree to respond to a pre-motion conference request within four (4) business days (by November 1, 2012) in an effort to expedite resolution of these issues. As set forth in its response to plaintiffs' meet-and-confer letter, the USTA believes it has already produced all of the documents requested by plaintiffs that are arguably relevant to the recreation and amusement defense set forth in 29 U.S.C. § 213(a)(3). To qualify for the exemption, the statute requires only that the putative employer show that: (1) the establishment at issue is a recreation or amusement establishment; and (2) the establishment earns more than two-thirds of its receipts during any six month period

of any calendar year, or only operates for seven months in any calendar year. *See* 29 U.S.C. § 213(a)(3). "'Sports events' are among those types of recreational activities specifically considered by Congress to be covered by the exemption" *Jeffrey v. Sarasota White Sox, Inc*., 64 F.3d 590, 595 (11th Cir. 1995). The USTA accordingly believes that plaintiffs' requests for documents regarding the compensation of all USTA employees, the internal workings of its Board of Directors, and advertisements placed for employees of other entities at the US Open are irrelevant and should be rejected.

The USTA also proposes that the Court set a deadline of November 21, 2012 for the submission of its motion for summary judgment. Plaintiffs' arguments that summary judgment is "premature" are inconsistent with the Federal Rules of Civil Procedure, which permit any party to move for summary judgment "at any time." *See* Fed. R. Civ. P. 56(b). They also are contrary to the Court's authority to consider dispositive motions prior to an order on class certification. Indeed, "ruling on the merits of [plaintiffs'] claim[s]" prior to deciding class certification may "protect the parties from needless and costly further litigation." *In re Starbucks Employee Gratuity Litigation*, 264 F.R.D. 67, 75 (S.D.N.Y. 2009); *cf. Amendola v. Bristol-Myers Squibb Co.,* 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (deferring decision on notice in putative collective action under 29 U.S.C. § 216(b) pending decision on summary judgment).

C.     **Plaintiffs' Position Regarding Further Discovery**

As shown by the correspondence between the parties, Plaintiffs believe the discovery responses provided by the USTA in connection with its affirmative defense have significant deficiencies; as a result, to permit the USTA to move for summary judgment at this time would prejudice Plaintiffs. Although the USTA contends that the only remaining discovery in connection with its affirmative defense is the deposition of Mr. Healy, that is not so. Until the

4

USTA produces all of the documents requested by Plaintiffs in connection with the USTA's defense, the parties cannot accurately assess what further discovery must take place.

The USTA has asserted an affirmative defense under 29 USC 213(a)(3), claiming that the USTA is a "recreational organization" and/or that the US Open is a "recreational event" and thus, even if Plaintiffs are employees, the USTA is not required to pay them overtime under the FLSA. The USTA now refuses to produce documents that are relevant to this defense; the USTA's withholding of documents is prejudicial to Plaintiffs because it allows the USTA to avoid discovery for an affirmative defense on which the USTA bears the burden of proof, that is narrowly construed in favor of the plaintiffs.  The USTA's chosen exemption was enacted in 1961, and its purpose was to ensure that small companies that only operate for part of the year, or only receive revenue for a short period each year, are able to operate without the burden of paying the relatively high minimum wages required by the FLSA.  *See Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255 (6th Cir. 1987).  Federal regulations state "[t]ypical examples of [recreational organizations] are the concessionaires at amusement parks and beaches." 29 CFR 779.385.  Courts have expressly looked at the underlying purpose of an organization in order to determine whether the organization is a recreational organization.  *See Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 397 (6th Cir. 2004) (employer's purpose was not recreation, but rather to sell hotel rooms).

Here, the USTA claims that it is a recreational organization, yet refuses to provide documents relevant to its purpose.  Plaintiffs have requested the USTA's contracts with its board members—whose function is to "establish the policies and objectives of the USTA"—and have requested minutes of the USTA's board of directors' meetings, among other things.  Yet, the

USTA has refused to provide these documents, which are directly relevant to the USTA's purpose.

Moreover, the USTA admits that it pays some employees who work at the US Open overtime, despite the exemption that purportedly applies to Plaintiffs if they are held to be employees. Surely, if the USTA's advertisements showing that the USTA pays overtime at the US Open are provided, they will lead to admissible evidence concerning the USTA's decision to apply the seasonal exemption to some of its employees and not others, and whether the USTA—whose revenues are in the hundreds of millions each year and who paid its chief executive in excess of $9 million in the year 2008—is the type of organization that was the intended beneficiary of the exemption.

Until these documents, and all of those listed in the correspondence between the parties in Exhibits A-C hereto are produced, Plaintiffs should not be required to respond to the USTA's motion for summary judgment on this affirmative defense. Alternatively, if the USTA objects to providing the discovery necessary, Plaintiffs would not object if the USTA dropped its affirmative defense.

Moreover, from a case management perspective, the USTA's request for a summary judgment motion is wasteful and premature. Even if summary judgment is granted against the four named plaintiffs—the only parties against whom the USTA has requested to move—other plaintiffs have opted in and the case will therefore continue. The Court has granted Plaintiffs' motion for conditional certification pursuant to 29 U.S.C. §216(b), and Plaintiffs' motion for class certification is *sub judice*. Although Plaintiffs believe the USTA's motion for summary judgment is unlikely to succeed, if the Court is inclined to permit the USTA to move for

summary judgment it should be after class certification and full merits discovery, and after any additional umpires opt in pursuant the FLSA notice procedure that the Court has approved.

## II.   THE USTA'S OBJECTIONS TO PLAINTIFFS' PROPOSED RULE 23 NOTICE AND PLAINTIFFS' RESPONSES TO OBJECTIONS

Pursuant to the Court's October 5, 2012 order, the USTA makes the following objections to the proposed Rule 23 notice provided by plaintiffs to the Court on August 3, 2012; Plaintiff's responses immediately follow each objection.  The USTA maintains its contention that plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure should be denied for the reasons set forth in its opposition to plaintiffs' motion.  The USTA further contends that any decision on plaintiffs' motion for class certification should be deferred until the Court has considered the USTA's motion for summary judgment, which has been ready for submission since May 2012.

Plaintiffs maintain that the proposed notice does not need to be altered, except as expressly agreed to by Plaintiffs below.  Plaintiffs' proposed notice is modeled in large part on the notice from *Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (JGK), 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010), which was approved by Judge Koeltl of this District.  That notice is attached hereto as Exhibit D.  The USTA contends that *Hart* is not persuasive authority regarding any contested issue noted below because the stipulation submitted by plaintiffs contains no legal analysis and there is no evidence that the issues identified below were disputed or addressed in *Hart*.

**Failure to Disclose Potential Adverse Effects of Action on Independent Contractor Status of Putative Class:** The USTA objects to plaintiffs' proposed notice because it fails to disclose to plaintiffs that their interests may be adversely affected by the outcome of this lawsuit.

Specifically, if plaintiffs are awarded their requested relief, putative class members may no longer be able to claim independent contractor status for their income and expenses related to umpiring tennis matches, and may be required to amend prior tax returns in which they claimed this status.

As the USTA noted in its opposition to plaintiffs' motion for class certification, this inherent conflict of interest between the named plaintiffs and putative class members precludes class treatment. However, if the Court determines that this case may proceed as a class action, putative class members must at a minimum be informed of the potential consequences plaintiffs' claims may have on their interests so that they may make an informed decision regarding the lawsuit. Such a disclosure is required if, as plaintiffs contend, "any umpire who believes he or she benefits from filing taxes as an independent contractor is free to opt out of the case and not be bound pursuant to the express terms of Rule 23." This is particularly the case if the notice includes unsolicited legal advice regarding putative class members' ability to participate in the lawsuit even if they have signed an independent contractor agreement or filed their tax returns as independent contractors, as plaintiffs have proposed in Sections 12 and 13 of the notice.

The USTA contends that plaintiffs' proposed notice should disclose this potential conflict in Sections 12 and 13 of the proposed notice. The USTA contends that Section 12 should be revised to read as follows: "The signing of an independent contractor agreement or stating that you are an independent contractor does not prohibit you from participating in the class at this time. However, the relief plaintiffs are seeking in this action may affect your ability to claim independent contractor status in past or future years." This proposed revision does not provide tax or legal advice regarding how putative class members should classify themselves, but gives

sufficient notice of the issue so that they may consult with their attorney or tax professional regarding how their participation will affect their ability to claim independent contractor status.

The USTA contends that Section 13 should be revised to read as follows: "The fact that you file your taxes as an independent contractor does not prohibit you from participating in the class.  However, the relief plaintiffs are seeking in this action may affect your ability to claim independent contractor status on your tax returns and may require you to amend your tax returns for prior years accordingly." As with the proposed revision to Section 12, this proposed revision does not provide tax or legal advice regarding how putative class members should classify themselves, but gives sufficient notice of the issue so that they may consult with their attorney or tax professional regarding how their participation will affect their ability to claim independent contractor status.

**Plaintiffs' Response**: The USTA's proposed amendments are unnecessary.  As Plaintiffs argued in their reply on class certification, any umpire who believes he or she benefits from filing taxes as an independent contractor is free to opt out of the case and not be bound pursuant to the express terms of Rule 23. Dkt. No. 68 at 10.  Moreover, the USTA's proposition is premature at this time.  No payment is being made to Class members, and no finding has yet been made that the Class members are employees, thus there is no impact on their taxes at this time.  In the event that this action settles or Plaintiffs prevail at trial, Class members will have the opportunity to opt out at that time and can decide to do so with a clearer understanding of the financial impact of their decisions.

Still further, the USTA's proposed additions dispense tax advice that is wholly inappropriate and potentially inaccurate.  The USTA has cited no authority for the proposition that this action will require class members to file their taxes as employees, and it has given no

9

authority for proposition that any class member will have to amend his or her tax returns for the years relevant to this action. Nor has the USTA cited any authority requiring the inclusion of tax advice in the notice—especially in a situation, like the present, where no payment is being made to Class members at the time the notice is being sent.

**Page 1, Second Paragraph:** The USTA objects to plaintiffs' exclusion of the USTA's defense that umpires are exempt from the overtime requirements of the New York Labor Law as employees of a recreation or amusement establishment.

The USTA contends that the following language should be included after the first sentence of the second paragraph of page 1 of the proposed notice: "The USTA also contends that, even if umpires are not independent contractors, the US Open qualifies as a recreational or amusement establishment that is exempt from the payment of overtime under New York law."

**Plaintiffs' Response:** Plaintiffs do not object to the inclusion of this sentence.

**Pages 1-2, "Your Legal Rights and Options In This Lawsuit":** The USTA objects to plaintiffs' language in the section entitled "Your Legal Rights and Options in this Lawsuit." The language proposed by plaintiffs is misleading because the only suggested outcome it identifies to this litigation is the "possibility of getting money or other benefits that may come from a trial or settlement." The section fails to fully inform the putative class members that they will be bound by both unfavorable and favorable outcomes, and does not disclose the potential costs for which plaintiffs may be liable in the event of an unfavorable outcome. *See generally* Manual for Complex Litigation (Fourth Edition) § 21.311 (2011) (class notice should include "[s]ufficient information about the case… to enable class members to make an informed decision about their participation," including "explaining any risks… of retaining class membership…"). The proposed section also fails to disclose the potential adverse effects a favorable outcome may

have on putative class members' ability to claim independent contractor status for their work umpiring tennis matches at the US Open.   *Id*.

The USTA contends that the section entitled "Do Nothing" should be revised to state the following: **"Stay in this lawsuit.  Be bound by the outcome.**  If you do nothing, you will be bound by the outcome of the lawsuit, whether it is favorable or unfavorable.  You will give up any rights to sue the USTA separately for the same legal claims in a different lawsuit."

The USTA contends that the section entitled "Ask to Be Excluded" should be revised to state the following: "**Get out of the lawsuit.  Do not be bound by the outcome.**  If you ask to be excluded, you will not be bound by the outcome of the lawsuit, whether it be favorable or unfavorable.  You may be able to sue the USTA on your own for the same legal claims that are involved in this lawsuit.  It is possible that if you ask to be excluded, but you do not sue the USTA on your own within the required legal time period, you will lose your right to bring these claims."

**Plaintiffs' Response:** The USTA again suggests additions that will have a chilling effect on class members; however, the USTA has not suggested any proposed language for these additions.  Plaintiffs have addressed the USTA's desire to give tax advice above.  With regard to the purported potential costs class members may bear in relation to this lawsuit: The USTA has provided Plaintiffs with no authority to support its position that Rule 23 class members are responsible for any costs in a litigation, and Plaintiffs are aware of none.  Indeed, the entire purpose of a Rule 23 class action is to pool together small claims that are too small to justify the cost of bringing an individual suit. The USTA's proposed addition on this point should be denied.

To the extent the USTA's comments about costs are directed toward Plaintiffs' Section 216(b) notice, the time has passed for those objections.  The USTA did not raise this objection in

its opposition to Plaintiffs' Section 216(b) motion.  Moreover, the inclusion of a statement that opt-in plaintiffs may be liable for the defendant's cost in an FLSA action has been rejected. *Calderon v. King Umberto, Inc.*, No. CV 11-6278 (LDW)(ETB), 2012 U.S. Dist. LEXIS 137391, at *19 (E.D.N.Y. Sept. 25, 2012) (defendant's attempt to include statement that opt-in plaintiffs may be responsible for costs was "without merit").

Plaintiffs do not object to the USTA's proposal to change the "Do Nothing" and "Ask to be Excluded" paragraphs.

**Page 2, First Paragraph:** The USTA objects to plaintiffs' statement that "If you do not ask to be excluded, and if the Plaintiffs prove their claims and win this case, you will be notified and instructed on how to claim your share."  The requested language is unnecessary, misleading, inaccurate, and based upon speculation.  First, it only references the possible positive outcomes for putative class members and omits any discussion of negative outcomes, thereby encouraging putative class members to remain in the class.  *See generally* Manual for Complex Litigation at § 21.311 (class notice should include "[s]ufficient information about the case… to enable class members to make an informed decision about their participation," including "explaining any risks… of retaining class membership…").  Second, plaintiffs' motion for class certification did not argue, and the Court has not decided, how damages will be determined or distributed in this lawsuit.  The language suggesting that damages will be determined or distributed in a particular manner thus is premature and speculative.  The proposed sentence accordingly should be omitted in its entirety.

**Plaintiffs' Response:** This sentence is not misleading and should remain. If the Class members receive a notice about a class action, they are likely read that notice to determine the

amount to which they are entitled.  The members of the Class must be advised that they are not receiving money at this time and will receive notice at a later date in the event of a recovery.

**Section 1:** The USTA objects to plaintiffs' statements that "You have legal rights that you may exercise before the Court holds a trial.  The trial will decide whether the claims against the USTA, on your behalf, are correct."  The statements are misleading and unnecessary.  The first statement is inaccurate because it suggests that putative class members need not exercise their "rights" until "before the Court holds a trial."  It is not certain that the Court will hold a trial, and in any event, any "rights" of putative class members must be exercised within the deadlines set by the Court.  The second sentence is misleading because there has been no determination that a trial will be held in this action, nor is it certain that the trial will be conducted "on behalf of" the putative class member that receives the notice.

In addition to being misleading, both sentences are unnecessary.  Section 1 is entitled "Why did I get this notice?"  The remaining information in the section sufficiently answers the question.  The issues addressed in the two sentences are unnecessary to answering this question and are addressed elsewhere in the notice.

Plaintiffs' Response: Plaintiffs do not oppose the removal of the sentence beginning with "You have legal rights…."  With regard to the second sentence, Plaintiffs are willing to change the language to: "If there is a trial in this case, the trial will decide whether the claims against the USTA, on your behalf, are correct."

**Section 2:** The USTA objects to Section 2 because it inaccurately describes the "main issues" in this lawsuit and is redundant to the information contained in Sections 5 and 6 of the notice.  Section 2 fails to identify various defenses that the USTA has asserted to plaintiffs' claims.  This includes the USTA's defense that, even if plaintiffs are employees (which the USTA

13

contends plaintiffs are not), they are exempt from the overtime requirements of the New York Labor Law.  Because the issues in the lawsuit also are described in Sections 5 and 6 of the notice, the USTA contends that Section 2 should be stricken.

**Plaintiffs' Response:** The information in this section is not redundant.  It is a summary of information to be found below, and is designed to engage class members at the beginning of the notice, and inform them of the nature of the case, at the outset in order to aid their understanding as they read the notice.  There is no need to state the USTA's affirmative defense in this paragraph due to its summary nature.  Section 6 below is titled "How does the USTA answer?"  Plaintiffs agree that the USTA's affirmative defense should be stated in section 6.

**Section 4:** The USTA objects to Section 4 because it is confusing and misleading, particularly if putative class members also are sent notice of plaintiffs' collective action claims under the Fair Labor Standards Act.  Plaintiffs' proposed language suggests that the Court's order on class certification is final, when in fact the order is interlocutory and may be amended by the Court at any time before judgment.  *See, e.g.,* Fed. R. Civ. P. 23(c)(1)(C) (permitting district court to alter or amend any class certification order before final judgment); Advisory Committee Notes to 1966 Amendment to Rule 23(c)(1) ("A [class] determination once made can be altered or amended before the decision on the merits if, upon fuller development of the facts, the original determination appears unsound."); *In re Credit Suisse First Boston Corp. (Lantronix Inc.) Analyst Sec. Litig.,* 250 F.R.D. 137 (S.D.N.Y. 2008) (decertifying previously-certified Rule 23 class).  In addition, plaintiffs' suggestion that the issue of class certification has been finally decided may confuse putative class members who also receive notice of plaintiffs' FLSA collective action claims.  The FLSA notice informs putative class members that the issue of

whether the case can proceed as a collective action has not yet been decided and will be reviewed by the Court at a later time.

**Plaintiffs' Response:** Rule 23 expressly requires that a class notice be concise, clear, and written in plain and easily understood language.   Fed. R. Civ. P. 23 (c)(2)(B). The USTA's request—to include informational statements about potential appeals under Rule 23(f) and to include a statement that the class may be modified for reasons currently unknown and in ways currently unknown—is unnecessary and against the plain-language requirements of Rule 23. First, if the USTA appeals pursuant to Rule 23(f), the class notice will likely not be sent until that appeal is resolved (although plaintiffs would request that the Section 216(b) notice be sent at that time).  In such a situation, there would be no need to include information on Rule 23(f) appeals because the notice would be sent after the resolution of the appeal.  With regard to the Court's ability to alter or amend the class definition, the USTA has pointed to no situation in which that would happen.  There is no need to inform class members of every possibility that may occur under Rule 23.

**Section 5:** The USTA objects to plaintiffs' statement that they seek "an additional amount equal to any underpayment as liquidated damages."  Plaintiffs' statement inaccurately states the law.  For the vast majority of the class period, the New York Labor Law only permits plaintiffs to recover an amount equal to 25 percent of their unpaid wages as liquidated damages.

**Plaintiffs' Response:** Plaintiffs propose the following amendment to this section: "The Plaintiffs also seek liquidated damages, which range from 25% to 100% of damages, as well as attorneys' fees and costs."

**Section 6:** The USTA objects to plaintiffs' proposed Section 6 because it fails to fully explain the USTA's response to plaintiffs' allegations.  The USTA contends that the first two

sentences of the section should be revised to read as follows: "The Defendant denies the Plaintiffs' allegations and contends that umpires are properly classified as independent contractors.   The Defendant further contends that even if umpires are not independent contractors, they are exempt from the overtime requirements of the New York Labor Law."

**Plaintiffs' Response:** Plaintiffs do not object to this addition.

**Section 8:** The USTA objects to Section 8 because it is misleading and unnecessary.  The section purports to state what "Plaintiffs are asking for," but does not describe the potential impact of this request on the putative class.  In particular, the section does not provide any information to putative class members regarding how plaintiffs' requested relief may affect their ability to claim independent contractor status in past or future filings with the government.  The proposed section also is unnecessary and duplicative of Section 5, which already describes what plaintiffs are claiming in the lawsuit.  The USTA therefore contends that Section 8 should be stricken.

**Plaintiffs' Response:** For the reasons stated above in regard to the purported "failure to disclose potential adverse effects," the USTA's proposal to add tax advice to the notice is without merit.  Plaintiffs' arguments above are incorporated herein.

**Section 9:** The USTA objects to plaintiffs' statement that "If any money or benefits are awarded, you will be notified and instructed how to claim your share."  As noted in the USTA's objections to the first paragraph of page 2 of the notice, this statement is unnecessary, misleading, inaccurate, and based upon speculation.  First, it only references the possible positive outcomes for putative class members and omits any discussion of negative outcomes, thereby encouraging putative class members to remain in the class.  Second, plaintiffs' motion for class certification did not argue, and the Court has not decided, how damages will be determined or

distributed in this lawsuit. The language suggesting that damages will be determined or distributed in a particular manner thus is premature and speculative. The proposed sentence accordingly should be omitted in its entirety.

**Plaintiffs' Response:** Plaintiffs agreed to additional language informing class members of potential negative outcomes of the case; thus, this objection is moot. Moreover, the statement beginning with "If any money is awarded . . ." is entirely accurate and should remain. In a class action settlement or verdict, the standard practice is that a damage allocation plan is either agreed upon by the parties in connection with a settlement or determined by post-verdict evidence, after which class members are notified of the approximate amounts they will recover.

**Section 12:** The USTA objects to Section 12 because it fails to disclose that putative class members' ability to claim independent contractor status may be affected if they participate in this lawsuit. The statement "yes, you can" also fails to acknowledge these potential adverse consequences. For the reasons noted above, the USTA contends that the section should be revised to state as follows: "The signing of an independent contractor agreement or stating that you are an independent contractor does not prohibit you from participating in the class at this time. However, the relief plaintiffs are seeking in this action may affect your ability to claim independent contractor status in past of future years."

**Plaintiffs' Response:** This objection is repetitive of several others. *See infra at* Section 8. For the reasons above, the USTA's proposed tax advice should not be included in the notice.

**Section 13:** The USTA objects to Section 13 because it fails to disclose that putative class members' ability to claim independent contractor status on their tax returns may be affected if they participate in this lawsuit. The statement "yes, you can" also fails to acknowledge this potential adverse consequence. The USTA also objects to plaintiffs' contention that the proposed

language should be approved because it is modeled after class notice in *Hart v. Rick's Caberet Int'l, Inc.*  Plaintiffs have offered no evidence that the objections identified by the USTA in this case were considered or decided by the district court in *Hart.*

For the reasons noted above, the USTA contends that the section should be revised to state as follows: "The fact that you file your taxes as an independent contractor does not prohibit you from participating in the class.  However, the relief plaintiffs are seeking in this action may affect your ability to claim independent contractor status on your tax returns and may require you to amend your prior years' tax returns."

**Plaintiffs' Response:** This objection is repetitive of several others.  For the reasons above (*see infra* at Section 8), the USTA's proposed tax advice should not be included in the notice. This paragraph is modeled on the notice in *Hart*, which contained none of the additional language the USTA suggests.  *See* Exhbit D at Section 12.

<u>Section 15:</u> The USTA objects to Section 15 because is misleading, confusing, and speculative.  The only outcome to this litigation identified by plaintiffs' proposed language is the "possibility of getting money or other benefits that may come from a trial or settlement."  The section fails to fully inform the putative class members that they will be bound by both unfavorable and favorable outcomes, and does not disclose the potential costs for which plaintiffs may be liable in the event of an unfavorable outcome.  The proposed section also fails to disclose the potential adverse effects a favorable outcome may have on putative class members' ability to claim independent contractor status for their work umpiring tennis matches at the US Open.  Finally, the section improperly suggests that plaintiffs will be notified regarding how to "claim your share of the judgment or settlement," when there has been no determination by the Court as to whether such notice is appropriate or will be required.

The USTA also objects to Section 15 because it is duplicative of the information contained in the first two pages of the notice and does not clearly advise putative class members that they must make a choice and the different options available to them.  The USTA disputes plaintiffs' contention that the proposed language should be approved simply because it is modeled after class notice in *Hart v. Rick's Caberet Int'l, Inc.*  Plaintiffs have offered no evidence that the objections identified by the USTA in this case were considered or decided by the district court in *Hart*.

The USTA contends that Sections 15, 16, and 18 should be consolidated into a section entitled "What are my rights and options?"  The proposed section would read as follows:

You must decide whether to stay in the class or ask to be excluded, and you must decide this now.  You must elect one of the following options:

**Option 1**: **DO NOTHING.  Stay in this lawsuit.  Be bound by the outcome.**  If you do nothing, you will be bound by the outcome of this lawsuit, whether it is favorable or unfavorable.  You will give up any rights to sue the USTA separately for the same legal claims in a different lawsuit.

**Option 2**: **ASK TO BE EXCLUDED. Get out of the lawsuit.  Do not be bound by the outcome.**  If you ask to be excluded, you will not be bound by the outcome of the lawsuit, whether it be favorable or unfavorable.  You may be able to sue the USTA on your own for the same legal claims that are involved in this lawsuit.  It is possible that if you ask to be excluded, but you do not sue the USTA on your own within the legal time period, you will lose your right to bring these claims.

**How Do I Ask The Court to Exclude Me from the Class?** If you decide to ask to be excluded from the class and "opt-out" of this lawsuit, you must send a written request to

be excluded ("Request for Exclusion"), a copy of which is attached at the end of this notice, by fax, mail, or e-mail to class counsel at the following number or address: **[insert class counsel contact information**].

Be sure to include your name and address and sign the Request for Exclusion. **If you wish to exclude yourself from this case, any Requests for Exclusion must be postmarked, faxed, or e-mailed to class counsel no later than [90 days from date of mailing].**

**Plaintiffs' Response:** The USTA's objections above are without merit. As an initial matter, the USTA repeats its arguments that Class members should be informed of the results of a "negative" outcome of the case—a change to which Plaintiffs have agreed—and once again the USTA seeks to add tax advice to the notice, which Plaintiffs have addressed above.

With regard to the USTA's objections to paragraphs 15, 16, and 18, the USTA's proposed changes are merely stylistic and do not make the notice any clearer. These paragraphs are modeled on the notice in *Hart*, Exhibit D at Sections 15-18, and are clear as is. The USTA has not taken issue with the substance of these paragraphs.

<u>**Section 16**</u>: The USTA objects to Section 16 because it is misleading.  Plaintiffs' proposed title of "Why would I ask to be excluded" and the language of the section suggests that there are only limited reasons why a putative class member may choose to exclude themselves from the lawsuit.  The law does not require that a putative class member have any particular reason for choosing to exclude themselves from this lawsuit, and plaintiffs' proposed section omits several common reasons why putative class members may validly choose to opt-out of this litigation.

As noted in its objections to Section 15, the USTA contends that Sections 15, 16, and 18 should be stricken and replaced with the language noted in its response to Section 15. If the Court does not strike Section 16 for this reason, the USTA contends that Section 16 should be revised to state as follows: "You may ask to be excluded from the lawsuit for any reason, including because (1) you do not agree with the claims asserted by plaintiffs, (2) you do not wish to be bound by the outcome in this lawsuit, (3) you do you do not wish for the plaintiffs' attorneys to represent you in this matter, or (4) you are pursuing or wish to pursue your claims in your own lawsuit. If you choose to exclude yourself, you will not be bound by the outcome of this lawsuit, whether it be favorable or unfavorable." This language is broader than plaintiffs' proposed language and states in explicit terms putative class members' right to be excluded from this litigation "for any reason," including because they do not agree with the claims in the litigation, do not wish to be bound by the litigation, or wish to be represented by another attorney.

**Plaintiffs' Response:** The USTA's objection and proposed revision does nothing more than restate what the current paragraph says: that a Class member may opt out because they do not wish to sue the USTA or because they already have their own lawsuit. The broader, and more plain-English sentence proposed by Plaintiffs says the same in substance as the multi-numbered exposition (with *ad-hominem* attacks on Plaintiffs' counsel) proposed by the USTA.

**<u>Section 18</u>:** The USTA objects to Section 18 because it believes that the information contained in the section should be included with the section of the notice that discusses the putative class members' option to exclude themselves from the litigation. The USTA contends that it is confusing for putative class members if they are not provided information on how to exclude themselves together with a discussion regarding their rights to opt-out.

**Plaintiffs' Response:** The USTA's objection here is not to the substance of the notice, but to the location of this section.  Plaintiffs propose that this paragraph may be moved to follow Section 16, and the paragraph that is currently Section 17 can be moved to Section 18.

<u>Section 19</u>: The USTA objects to Section 19 because it suggests that class counsel represents all putative class members, regardless of whether they remain in the case or opt-out.  The USTA contends that the title of the combined sections should be revised to state "The Lawyers Representing the Class," the title of Section 19 should be revised to state "Who is representing the class in this case," and the first sentence of Section 19 should be revised to state "The class is represented by the law firms of Abbey Spanier Rodd & Abrams LLP and the Law Offices of Mitchell Schley, LLC."

**Plaintiffs' Response:** Plaintiffs do not object to this proposal.

<u>Section 21</u>: The USTA objects to Section 21 because it is misleading, incomplete, and inconsistent with New York ethical rules.  Plaintiffs' proposed section does not disclose that plaintiffs' counsel is representing plaintiffs and the proposed class on a contingency fee basis, nor does it identify the amount of the contingency fee.  New York Rule of Professional Conduct 2-106(D) requires that a lawyer must disclose in writing "the method by which the [contingency] fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery and whether such expenses are to be deducted before or, if not prohibited by statute or court rule, after the contingent fee is calculated."  The USTA contends that the existence of a contingency fee and the amount of the fee should be disclosed in Section 21 so that putative class members can make an informed decision regarding whether they wish to proceed with class counsel as their representative or wish to retain separate counsel.  *See* Fed. R. Civ. P. 23(c)(2)(B)

(requiring disclosure to class that class members may enter an appearance though a different attorney if they so desire).

**Plaintiffs' Response:** The USTA's suggestion here is misguided. Class counsel will not enter into a fee agreement with absent class members, and thus there will be no contingent fee to disclose to them at this time. In a class action, the Court approves any attorneys' fee requested, and that approval is made after class members receive notice of a settlement or victory at trial and have the opportunity to object to the fee requested. As of this time, there is no request for attorneys' fees, and moreover the fees that may be requested by Class counsel in the future cannot now be determined. Attorneys' fees may be awarded pursuant to the fee-shifting provisions of the labor laws, and thus the amount of fees requested may not be known until the conclusion of the litigation. If Class counsel request fees from the common fund, the amount of fees varies based on the size of the fund and cannot be determined at this time.

Moreover, New York's ethical rules do not require that class counsel include in a notice the precise contingent fee that will be sought. Rather, the rules merely require that a contingent fee be in writing. In a class action, however, the precise contingent fee entered into by the plaintiffs and their counsel is irrelevant because the Court, and not the named plaintiffs or Class members, approves the attorneys' fees.

**Section 23:** The USTA objects to Section 21 because it is misleading and confusing to putative class members who also receive notice of plaintiffs' FLSA collective action. The Court has not yet determined whether any class members may be called at trial or required to provide discovery, whether as part of plaintiffs' FLSA claim or their claims under the New York Labor Law. Post-certification discovery of individual class members is not prohibited and may be ordered in appropriate circumstances. *See, e.g.,* Manual for Complex Litigation at § 21.41;

*Krueger v. N.Y. Tel. Co.,* 163 F.R.D. 446 (S.D.N.Y. 1995) ("[T]here is authority for the use of both interrogatories and depositions against members of Rule 23 classes."). Because individual class members may be subject to limited discovery or may be subpoenaed to testify at trial, plaintiffs' statement that putative class members "do not need to attend the trial" is inaccurate and speculative. Neither plaintiffs nor the Court can determine at this time whether any individual class members will be subject to discovery or required to attend trial. The USTA accordingly contends that Section 23 should be stricken in its entirety.

**Plaintiffs' Response:** This paragraph was modeled directly from the notice in *Hart*. *See* Exhibit D at Section 23. Moreover, the USTA's suggestion here—that absent class members may be required to participate in discovery or be called to trial by the Court—is nonsensical. The single case the USTA has cited to support its proposed inclusion sets out a specific standard, which the USTA has made no effort to show that this standard will be met at the present or at any time in the future. *See Krueger v. N.Y. Tel. Co.,* 163 F.R.D. 446 (S.D.N.Y. 1995).[1] To the extent the USTA argues that a FLSA opt-in plaintiff may be required to attend the trial or respond to discovery, the proposed FLSA notice already states as much. Because FLSA opt-in plaintiffs may indeed attend the trial, to require Rule 23 Class members to attend as well would be cumulative at best, and harassing at worst.

Respectfully submitted,

DATED: October 22, 2012

_____/s/_____
Richard J. Rabin
Kelly L. Brown

---

[1]  The court in *Krueger* held that the proponent of absent class member discovery "must demonstrate *[first]* its need for the discovery for purposes of trial of the issues common to the class, *[second]* that the discovery not be undertaken with the purpose or effect of harassment of absent class members or of altering the membership of the opposing class, and *[third]* that the interrogatories be restricted to information directly relevant to the issues to be tried by the Court with respect to the class action aspects of the case." 163 F.R.D. at 450 (brackets and italics in original).

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY  10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
rrabin@akingump.com
kbrown@akingump.com


Nathan J. Oleson
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
noleson@akingump.com

ATTORNEYS FOR DEFENDANT
UNITED STATES TENNIS ASSOCIATION


_____/s/_____
Judith L. Spanier, Esq.
Orin Kurtz, Esq.
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016

Mitchell Schley, Esq.
LAW OFFICES OF MITCHELL SCHLEY, LLC
245 Park Avenue, 24th Floor
New York, NY 10167

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Joint Status Report was served this 22nd day of October, 2012 via the ECF filing system on all counsel for Defendant.

_____/s/_____
Orin Kurtz
